**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

LILA JEAN PECK,

Plaintiff,

v.

UNION PACIFIC RAILROAD CO. AND UNITED TRANSPORTATION UNION DISCIPLINE/INCOME PROTECTION PROGRAM,

Defendants.

Case No. 4:13-cv-00345-BLW

MEMORANDUM DECISION AND ORDER

Before the Court are the following motions: (1) Plaintiff Lila Jean Peck's Motion for Partial Summary Judgment on the Administrative Record (Dkt. 18); (2) Defendant United Transportation Union Discipline Income Protection Program's Motion for Summary Judgment (Dkt. 24); and (3) Defendant Union Pacific's Motion for Partial Summary Judgment (Dkt. 27).

The Discipline Income Protection Program is a voluntary program provided through the United Transportation Union, which is the certified representative of Union

Pacific train service employees. The Plan allows for certain payments in the event covered employees are disciplined in their permanent employment. The Plan, however, contains certain exceptions and qualifications, one being that there is no coverage while an employee remains in probationary status.

On November 9, 2012, Union Pacific rejected Peck's employment application. The letter rejecting her application stated that she was still in her probationary period. Peck later applied for benefits under the Plan. The Plan denied her claim, noting that she was removed from service by the carrier before she had completed her probationary period. After exhausting her appeals, Peck filed this case. She contends that the Plan's Review Committee mistakenly denied her claim. For the reasons set forth below, the Court will deny Peck's summary-judgment motion and grant Defendants' motions.

## BACKGROUND

On June 6, 2011, Peck started training to become an official Train Service employee for the Defendant Union Pacific Railroad. "Train Service" employee is a general title for brakemen, servicemen, conductors, and foremen. Training at Union Pacific for Train Service employees usually lasts, at a minimum, 14 weeks. *Duffy Memo.* at 1279, UPPR's Ex. B, Dkt. 26-2.

As noted above, the United Transportation Union ("UTU") is the certified representative of Union Pacific train service employees, and it makes available to its members a separate trust plan known as the United Transportation Discipline Income Protection Program ("DIPP" or "the Plan"). The Plan is structured in accordance with

the Employee Retirement Income Security Act ("ERISA"), and provides for certain payments in the event an employee is disciplined in their permanent employment and suffers a wage loss. The employee selects the level of coverage they wish to have and pays the requisite monthly payment.

To qualify for DIPP benefits, Union Pacific employees must successfully complete a "probationary period." *1978 Agreement*, UTU's Ex. 1, Dkt. 24-3. When Peck started training at Union Pacific, the national collective bargaining agreement between UTU and Union Pacific required applicants who wished to complete their "probationary period" to wait 60 days until after they established their "seniority date." *Id.* An applicant established their seniority date by passing the required Transportation Department examinations. *Id.*

On August 6, 2011, Peck passed her Conductor Operating Rules Exam, which established her "seniority date" as a Switchman, Brakeman, Conductor and Foreman. *HR Report Doc.*, Ex. E, Dkt. 26-5. According to the 1978 collective bargaining agreement, Peck's 60 days to complete the probationary period began to run. Ten days later, on August 16, 2011, Union Pacific furloughed Peck before she completed her probationary period. *Peck's Work History* at 55, Ex. F, Dkt. 26-6. She did not return to Union Pacific until July 23, 2012, about 11 months later.

During Peck's furlough, Union Pacific and UTU renegotiated the national collective bargaining agreement, including the probationary status provision. *2011*

*Agreement*, p. 2, UPPR's Ex. D, Dkt. 26-4. Specifically, the probationary status provision was amended to read as follows:

> "Upon completing training and protecting the first tour of compensated service, an additional sixty (60) days shall commence extending the time during which the carrier may reject the application for employment. Applications rejected by the carrier must be declined in writing to the applicant during his/her probationary period or application shall be considered accepted."

Because of this policy change, applicants now complete their probationary period 60 days after they complete both their training and "protect their first tour of compensated service." *Id.*

According to Union Pacific, Train Service employees finish their training when they complete UPRR's standard 14-week training program, which includes in-class and on-the-job instruction. *1998 Duffy Memo.*, UPRR Ex. B, Dkt. 26-2. After their training, probationary employees "protect their first tour of compensated service" by receiving a call to work in a non-trainee position, accepting the call, and actually working in a non-trainee position, such as that of a Switchman. *Public Law Board Br.*, 1265-66, UPPR's Ex. A, Dkt. 26-1.)

The new provision applies to everyone who had not yet completed their training prior to October 16, 2011. *Id.*

When Peck was furloughed in August 2011, she had apparently completed her classroom training, but she had not yet completed the full 14-week training program. *See, e.g.*, *Peck's Training History,* UPPR's Ex. F, Dkt. 26-6 ; *Peck's Student Training Summary*, UPRR's Ex. J, Dkt. 26-10. And when she returned to work in July 2012, she

was placed in the classroom again, and was working as a student with other crews. *See id.* According to Union Pacific and UTU, Peck remained as a trainee on the training board until she completed her classroom and on-the-job training and "protected her first tour of compensated service" on October 25, 2014. *Id.* Given this timeline, Peck would have been on track to complete her probationary period on December 24, 2012.

On November 5, 2012, Peck, while working as a student trainee with another crew, was involved in a derailment that caused damage to a Union Pacific train. *UTU Discipline Doc.*, Pl's Ex. A, Dkt. 20 at 3. On November 9, 2012, Union Pacific sent Peck a letter rejecting her application for employment and noting that she was still in her probationary status under Article VII, Section 1 of the Amended Agreement ("Wells Letter"). *Wells Letter.*, UPPR's Ex. I, Dkt. 26-9.

On November 14, 2012, Peck filed a claim with the UTU for DIPP benefits. In the application for benefits, Peck listed her occupation as a "COT," which stands for conductor in training. *Pl's DIPP Application* , UPRR's Ex. H, Dkt. 26-8. And when describing the "cause of removal," Peck wrote, "I was working as a student when the conductor derailed a car." *Id.* Her application also included the Wells Letter, which rejected Peck's employment application and noted that she had not completed her probationary period. *Wells Letter.*, UPPR's Ex. I, Dkt. 26-9

On November 21, 2012, the Plan Administer sent Lila Peck a letter that stated: "Since your employment was not permanent and you were still under your probationary

period, your claim must necessarily be denied." *UTU Decision Letter*, Pl's Ex. A, Dkt. 20 at 41.

On December 9, 2012, Peck appealed the administrator's denial of her claim for benefits under the program. She argued that she had passed her probationary period under the 1978 collective bargaining agreement, before it was amended in 2011. Specifically, she argued that she "completed her training" on June 24, 2011, when she completed her class room instruction and therefore the probationary provision under the 1978 agreement applied to her. *Peck's Appeal Letter,* Pl's Ex. A, Dkt. 20 at 13-14. Peck maintained that she was "marked up" on June 26, 2011, and established her seniority date on June 27, 2011. *Employee Work History*, Pl's Ex. A., Dkt. 20 at 15. Under the 1978 agreement, Peck would have passed her probationary status 60 days after she established her seniority date on June 27, 2011.

On December 12, 2012, the DIPP Review Committee informed Peck of a hearing it would convene to consider her appeal and invited her to submit a written statement or appear in person. On January 16, 2013, the DIPP Review Committee informed Peck that: "After careful consideration of the documents, records, and information presented on behalf of the claimant, the Review Committee has concluded that the original denial was correct. According to the record Claimant's application for employment was rejected, rightly or wrongly, by the Union Pacific Railroad Company." *Jan. 16, 2013, DIPP Review Committee Decision*, Pl's Ex. A, Dkt. 20 at 9-11. The DIPP Review Committee in their decision denying the appeal also explained that the Committee "does not sit in

judgment of the validity of a Claimant's discipline appeal," but instead "merely review[s] whether the type of event is 'covered' as eligible for benefits." *Id.*

On August 7, 2013, after her appeal had been denied, Peck filed her Complaint. She alleges that she is entitled to DIPP benefits because she was beyond her probationary period when she was terminated. The parties have now filed cross motions for summary judgment. Peck claims she is entitled to DIPP benefits while Union Pacific and UTU ask the Court to find as a matter of law that Peck had not completed her probationary period, and she therefore did not qualify for DIPP benefits.

## ANALYSIS

### 1. DIPP's Motion for Summary Judgment

At issue here is whether Peck became an official Union Pacific employee and thus a beneficiary of UTU DIPP rights and benefits, by successfully completing her "probationary period" before Union Pacific terminated her employment on November 8, 2012.

#### A. *Legal Standard*

"ERISA is a comprehensive statute designed to promote the interest of employees and their beneficiaries in employee benefit plans." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 136 (1990) (internal citation omitted). The proper standard of review of denial of ERISA benefits by plan administrators is the abuse of discretion standard. *Salomaa v. Honda LTD Plan*, 642 F.3d 666, 673 (9th Cir. 2011). "An ERISA fiduciary is obligated to guard the assets of the [Plan] from improper claims, as well as to pay legitimate

claims." *Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005) (internal quotation marks omitted).

"In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion." *Id.* quoting *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1473 (9th Cir. 1993). An ERISA administrator abuses its discretion only if the administrator "(1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Id.*

A finding is "clearly erroneous when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 622 (1993) (internal quotation marks omitted). The Court must uphold the decision of the Plan "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." *Boyd*, 410 F.3d at 1178.

**2. The Plan Denial of Peck's Request for Benefits Was Reasonable.**

The Plan's clearly excludes coverage for employees who have not completed their probationary period. Based on the evidence Peck provided, the Plan reasonably concluded that Peck had not yet completed her probationary period.

On appeal, the Review Committee considered Peck's argument that she had completed her probationary period under the 1978 collective bargaining agreement, as well as the evidence Peck provided to support her claim, and affirmed the decision of the

Administrator. Peck supplies no evidence that the Committee abused its discretion in reaching this conclusion. There is no suggestion that the Administrator or Committee failed to provide an explanation or acted contrary to the plain language of the Plan. Instead, Peck argues that the Committee incorrectly determined that she had not passed her probationary status. But, as explained below, the Committee conclusion comported with the evidence that Peck provided.

Here, the Committee reviewed various pieces of evidence that suggested Peck had not completed her probationary status. First, the letter she received from Richard Wells explaining her dismissal states that she had not completed her probationary status and they were rejecting her application. In reality, this letter alone provided the necessary basis for the Plan Committee to reject Peck's claim. The Plan Committee does not determine whether an employee's removal was proper and the Committee is not obliged to conduct an independent investigation outside of the materials the claimant provides; instead, the Railway Labor Act provides the "mandatory, exclusive, and comprehensive system" for resolving union grievance disputes. *Brotherhood of Locomotive Engineers v. Louisville & Nashville,* 373 U.S. 33, 38 (1963).

But the Committee had more than just the Well's letter to support their finding that she had not completed her probationary period. Namely, the Committee had her application for benefits, which listed her as "COT" ("Conductor on Training"). She also stated in her application that she was working as a student. All of this supports the Committee's determination that Peck had not completed her training before the 2011

amended collective bargaining agreement took effect, and therefore the 2011 agreement controls the issue of whether Peck successfully completed her probationary period.

By contrast, Peck offers no evidence indicating she had completed her probationary period by November 2012. She simply argues that she completed her training in June 2011, and therefore she falls under the former collective bargaining agreement for establishing probationary status. But Peck's mere assertions about when she completed her training and what collective bargaining agreement controls, without evidence to back up her claims, are not enough to make the Committee's decision arbitrary and capricious.

**3. Union Pacific's Motion for Summary Judgment**

Union Pacific's Motion for Partial Summary Judgment raises a similar issue to both Peck and DIPP's motions for summary judgment. Union Pacific, like Peck and DIPP, asks the Court to resolve whether Peck had completed her probationary status and was therefore qualified to receive UTU benefits under the Plan. However, because Union Pacific is neither a plan administrator nor an insurer under ERISA, the legal standard for resolving this question with respect to Union Pacific is not the abuse-of-discretion standard that applies to the Plan, but instead it is the typical summary-judgment standard, i.e., whether a genuine issue of material fact exists.

Here, Peck argues that Union Pacific's motion should be denied because Section 2 in the Amended Agreement is "ambiguous and subject to multiple interpretations." *Peck's Resp.* at 3, Dkt. 34. Specifically, Peck takes issue with the following italicized language in Section 2 of the Amended Agreement: "The changes set forth in Section 1, above,

shall become effective thirty (30) days after the date of this Agreement and shall apply to applicants *who complete training on or after that date*." *2011 Agreement*, p. 2, UPPR's Ex. D, Dkt. 26-4.

While Peck may complain that the phrase "complete training" is ambiguous, UTU and Union Pacific, the parties to the contract, have agreed on the meaning of the phrase. When parties to a contract have attached the same meaning to an agreement, it is interpreted in accordance with that meaning. *American Cas. Co. of Reading, Pennsylvania v. Baker*, 22 F.3d 880, 887 (9th Cir. 1994), citing Restatement (Second) of Contracts § 201 (1) (1981). "[T]he primary search is for a common meaning of the parties, not a meaning imposed on them by the law," or some reasonable hypothetical person. *City of Springfield v. Washington Public Power Supply System*, 752 F.2d 1423, 1427 (9th Cir. 1985), quoting comment c to Restatement (Second) of Contracts (1981).

Union Pacific and UTU both agree that an applicant must complete at least 14 weeks of classroom instruction and on-the-job training to "complete training." This interpretation is reasonable. The Court therefore finds no ambiguity in the phrase "complete training." This means that the 2011 amended collective bargaining agreement controls whether Peck completed her probationary status. And there is no dispute that Peck did not complete her probationary status under the new agreement. Therefore, Peck was not entitled to the Plan benefits at the time her application was rejected by Union Pacific.

## ORDER

**IT IS ORDERED THAT:**

1. Plaintiff Lila Jean Peck's Motion for Partial Summary Judgment on the Administrative Record (Dkt. 18) is **DENIED**.

2. Defendant United Transportation Union Discipline Income Protection Program's Motion for Summary Judgment (Dkt. 24) and Defendant Union Pacific's Motion for Partial Summary Judgment (Dkt. 27) are both **GRANTED**.

DATED: October 15, 2014

B. Lynn Winmill
Chief Judge
United States District Court